U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG - 1 2008

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

GEORGE R. ROLAND,                 §
                                  §
          Plaintiff,              §
                                  §
VS.                               §   NO. 4:07-CV-699-A
                                  §
TRANSAMERICA LIFE INSURANCE       §
COMPANY,                          §
                                  §
          Defendant.              §

MEMORANDUM OPINION
and
ORDER

On June 18, 2008, defendant, Transamerica Life Insurance

Company, filed a motion for summary judgment in the above-

captioned action. Plaintiff, George R. Roland, filed his

response on July 11, 2008, and defendant filed its reply on July

17, 2008. On July 25, 2008, the court granted plaintiff's motion

to file a supplemental brief in response to defendant's summary

judgment motion. Having considered defendant's motion, the

response, reply, plaintiff's supplemental brief, the summary

judgment evidence, and applicable authorities, the court

concludes that defendant's motion for summary judgment should be

granted.

I.

## Plaintiff's Claims

Plaintiff alleges that in 1992 defendant issued him a long-term care insurance policy ("Policy"), but has now wrongfully refused to pay benefits due him under the Alternate Plan of Care Benefit provision. Plaintiff now brings claims against defendant for breach of contract; violations of the Texas Insurance Code, including misrepresentation; breach of the common law duty of good faith and fair dealing; violation of the prompt pay statute; and common law fraud. Plaintiff further seeks a declaratory judgment that the Policy is ambiguous and that plaintiff's interpretation is reasonable (thus entitling him to benefits).

II.

## Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on all plaintiff's claims. Specifically, defendant maintains that plaintiff is not entitled to benefits under the Alternate Plan of Care Benefit because Policy conditions were not satisfied; plaintiff demands benefits be included in the Alternate Plan of Care Benefit that are contrary to the Policy; defendant has not violated any insurance code provisions because its liability to plaintiff is

not reasonably clear; and plaintiff has failed to allege facts to support his fraud claim.

## Undisputed Facts

The facts set forth below are undisputed in the summary judgment record:

In or around November 1992, Dr. and Mrs. Roland applied for, and received, an insurance policy from PFL Life Insurance Company that provided long-term care insurance. (On March 1, 2001, PFL Life Insurance Company changed its name to Transamerica Life Insurance Company.)[1] Plaintiff purchased the Policy through defendant's agent, Larry Hagedorn. Mr. Hagedorn filled out the application, and plaintiff signed it. In the application for coverage, plaintiff selected "Basic Long-Term Care Coverage," which provides a "Long Term Care Benefit" of $100 per day for each day of confinement in a Long-Term Care Facility after satisfaction of a 100-day elimination period. Def.'s App. at 1, 9.

---

[1] One point of contention in this action involves a difference in policies. The Policy issued to plaintiff is a form 1091; however, when plaintiff later requested a copy of the Policy, a different form, 1092, was actually sent to plaintiff. When plaintiff made his claim for benefits under the Policy, defendant initially reviewed his claim using the 1092 form. Plaintiff seeks damages only under form 1091. The relevant definitions and provisions set forth herein are identical except where specifically noted.

The following Policy definitions are relevant to this action:

| | |
|---|---|
| LONG-TERM CARE FACILITY | a Skilled Nursing Facility; an Intermediate Care Facility; or a Custodial Care Facility. |
| | . . . . |
| | The term "Long-Term Care Facility" does not include: (1) a hospital; (2) a facility owned and/or operated by a member of your family . . . . |
| LONG-TERM CARE FACILITY CONFINEMENT | an Insured Person's admission to a Long-Term Care Facility as an overnight bed patient. |

Def.'s App. at 12.

| | |
|---|---|
| PERIOD OF CONFINEMENT | the time during which an Insured Person is confined in a Long-Term Care Facility for Necessary Care. |
| | . . . . |

Def.'s App. at 13.

The Policy provision entitled "Long-Term Care Benefit" states that "[w]e will pay You the Long-Term Care Benefit for each day, during a Period of Confinement, that an Insured Person requires Long-Term Care Facility Confinement." Def.'s App. 14.

Two of the Policy provisions at issue in this action are the

4

Prescription Drug Benefit and the Waiver of Premium Benefit, both

set forth in pertinent part below:

### Prescription Drug Benefit

We will pay 100% of the charges for Prescription Drugs,
up to the Maximum Benefit per Calendar Month as shown
in the Schedule, while an Insured Person is confined in
a Long-Term Care Facility and is receiving a daily
Long-Term Care Benefit under the terms of this Policy.

For the purposes of this benefit, Prescription Drugs
shall mean any drugs prescribed for the Insured Person
by his/her Physician which:

. . . .

> (2) are purchased during the Insured Person's
>     Long-Term Care Facility Confinement. . .

. . . .

We will not pay for:

. . . .

> (2) any Prescription Drugs purchased after the
>     Insured Person's Long-Term Care Facility
>     Confinement ends; . . . .

Def.'s App. at 15.

### Waiver of Premium Benefit

We will waive premiums on a monthly basis while an
Insured Person is confined in a Long-Term Care
Facility, beginning 90 days after the Insured Person
has satisfied the Elimination Period and is receiving
benefits for such confinement.

The Waiver of Premium Benefit will end on the first of
the following to occur:

(1) the date the Insured Person is discharged from
        the Long-Term Care Facility;. . . .

Def.'s App. at 16-17.

This action arises from plaintiff's claim for benefits under

the Alternate Plan of Care Benefit, set forth below:

### Alternate Plan of Care Benefit

If an Insured Person is confined in a Long-Term Care
Facility and is receiving benefits under this Policy,
We will consider, instead, paying benefits for the cost
of services provided under a written, medically
acceptable, alternate plan of care.

The alternate plan of care:

    (1) can be initiated by the Insured Person or by
        Us;
    (2) must be developed by health care
        professionals;
    (3) must be consistent with generally accepted
        medical practices; and
    (4) must be mutually agreed to by the Insured
        Person, the Insured Person's Physician and Us.

The alternate plan of care may provide for services
which differ from or are not usually covered by Your
Policy, such as

    (1) building a ramp for wheelchair access;
    (2) modifying a kitchen or bathroom; or
    (3) companion care or other personal care
services.

Services under an alternate plan of care will be paid
at the levels and limits specified in the plan.
Benefits payable for an alternate plan of care and
benefits paid for Long-Term Care due to the same or
related cause, in total, will not exceed the benefit

6

limits that, in the absence of such a plan, would otherwise be payable under the Long-Term Care Benefit alone.

The Insured Person's agreement to participate in an alternate plan of care will not waive any of the Insured Person's or Our rights under this Policy.

Def.'s App. at 16.

During the summer of 2006, plaintiff sought admission to a long-term care facility under the Policy. After a screening and assessment process arranged by defendant, defendant approved plaintiff's application for admission to Medallion Assisted Living ("Medallion"). Plaintiff paid for 100 days at Medallion, where he resided from August 24, 2006, to December 10, 2006. Plaintiff left the facility on some weekends to go home and be with his wife.

Upon returning home after ending his contract with Medallion in December 2006, plaintiff made a claim for benefits under the Alternate Plan of Care Benefit provision of the Policy. As required by the Policy, plaintiff's physician, Dr. Rueben Elovitz, completed and submitted to defendant a document entitled "Home Health Certification and Plan of Care" ("Plan of Care"), which Dr. Elovitz signed on December 29, 2006. Defendant acknowledged receipt of plaintiff's claim in January 2007. In the Plan of Care, Dr. Elovitz prescribed periodic monitoring of

plaintiff's physical condition by Golden Heritage Home Health Services ("Golden Heritage"). The cost of the alternate care services offered by Golden Heritage is $142 per month.

In May 2007 defendant offered plaintiff an Alternate Plan of Care Agreement ("Plan of Care Agreement"), which purported to set forth the terms of plaintiff's Alternate Plan of Care Benefit. This was the first in a series of Plan of Care Agreements defendant sent plaintiff and eventually plaintiff's counsel. The first Plan of Care Agreement sent to plaintiff provided up to forty dollars per day in benefits; this amount was revised in later Plan of Care Agreements to up to $100 per day. Each Plan of Care Agreement required plaintiff to sign and return it within fourteen days. Each Plan of Care Agreement stated that the benefits were for "actual charges incurred" for home health services provided by Golden Heritage. Plaintiff has continued to demand that the Plan of Care Agreement include a flat payment of $100 per day, the Prescription Drug Benefit, and the Waiver of Premium Benefit. Plaintiff never signed or agreed to any of defendant's proposed Plan of Care Agreements. Defendant has not paid any benefits to plaintiff under the Alternate Plan of Care Benefit.

When plaintiff purchased the Policy, it was originally

issued on Form 1091. Form 1091 was originally filed for approval with the Texas Department of Insurance ("TDI") but was withdrawn from the approval process when the successor form, 1092, was approved in October 1992, just before plaintiff's policy became effective in November 1992. Later, in response to plaintiff's request for a copy of the Policy, defendant provided plaintiff a form 1092. Defendant initially reviewed plaintiff's claim for benefits using form 1092. After learning that the policy issued to plaintiff was the 1091, defendant sought guidance from the TDI as to which form to use, and was directed to consider plaintiff's claim using form 1091. Plaintiff is asserting a claim in this action only under form 1091.

The Alternate Plan of Care Benefit provision in the 1091 form differs from that provision in the 1092 form. The 1091 form states that defendant will consider paying "benefits for the cost of services" and that services under an alternate plan of care will be paid "at the levels and limits specified in the plan." Def.'s App. at 16. The 1092 also uses the "benefits for the cost of services" language but states that services under the alternate plan of care "will be paid as actual charges up to the Long-Term Care Benefit limits." Id. at 116-17. Plaintiff did not learn that two different policy forms existed until depositions

of defendant's representatives in this action.

IV.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. <u>Anderson</u>, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the nonmoving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 256. To meet this burden, the nonmovant must "identify specific evidence in the record[] and [] articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." <u>Forsyth v.</u>

Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

V.

## Analysis

Texas law applies to this action. In Texas, the rules of interpretation and construction generally applicable to contracts apply equally to insurance contracts. See National Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). The court's primary concern is to effectuate the true intent of the parties as expressed in the insurance policy. See Lynch Props., Inc., 140 F.3d at 625-26. The court must construe the policy to give effect to each term in the contract and to avoid rendering any term a nullity. See id.; Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994). However, "[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." Lynch Props., Inc., 140 F.3d at 626 (quoting Forbau, 876 S.W.2d at 134).

Whether an insurance contract is ambiguous is a question of law. American Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003). If policy language can be given a definite or certain legal meaning, a contract is not ambiguous and the court may construe it as a matter of law. Id.; Lynch Props., Inc., 140 F.3d at 626. That the parties themselves disagree or offer conflicting opinions about the meaning or interpretation of a term does not create ambiguity. Id. "An ambiguity exists only if the contract language is susceptible to two or more reasonable interpretations." American Mfrs. Mut. Ins. Co., 124 S.W.3d at 157. When interpreting the language in an insurance policy, the court must give effect to all contractual provisions so that none are rendered meaningless. See id.

When an insurance policy contains defined terms, those definitions control the interpretation of the policy. Provident Life and Accident Ins. Co. v. Knott, 128 S.W.3d 211, 219 (Tex. 2003). The court must rely on the policy's defined terms when construing the contract provisions to determine the true intent of the parties. Id.

A.    The Breach of Contract Claim

Defendant contends that plaintiff is not entitled to any Alternate Plan of Care Benefit for two reasons: (1) he was not

confined as an "overnight bed patient" at a Long-Term Care Facility for 100 days as required by the Policy, because he left on weekends to visit his wife and thus failed to satisfy the required Elimination Period; and, (2) there is no alternate care plan to which the parties have mutually agreed, as required by the Policy, so no benefits can yet be paid. Defendant contends both provisions are conditions precedent that plaintiff must fulfill before benefits can be paid under the policy.

In their briefs, the parties discuss at length whether it is a condition precedent in the Policy that plaintiff sign the Alternate Plan of Care Agreement before any such benefits will be paid under the Policy. Under Texas law, a condition precedent is an act or event, which occurs subsequent to the making of a contract, that must occur before a right to performance arises and before there can be any breach of a contractual duty. <u>See Carrizales v. State Farm Lloyds</u>, 518 F.3d 343, 349 (5th Cir. 2008). Because it is undisputed that the parties have failed to mutually agree on the terms of a written Alternate Plan of Care, the court finds it unnecessary to determine whether plaintiff fulfilled the condition precedent of being confined to a facility for 100 days, or whether defendant may properly require

plaintiff, as a condition precedent, to sign the Alternate Care Plan Agreement.

Plaintiff repeatedly asserts that defendant has attempted to require him to sign various Alternate Care Plan Agreements that have purportedly limited the rights to which he is entitled under the Policy. The heart of plaintiff's argument rests on the following language in the Alternate Plan of Care Benefit: "[defendant] will consider paying benefits for the cost of services provided. . . ." Plaintiff contends that use of the word "benefits" entitles him to anything in the Policy that includes the word "benefit." Specifically, plaintiff contends that although he is no longer confined to a long-term care facility he is still entitled to the Waiver of Premium Benefit and Prescription Drug Benefit set forth in the Policy, and that the Long-Term Care Benefit of $100 per day is a per diem benefit payable to plaintiff to cover any "costs of services" at his discretion.[2] Alternatively, plaintiff argues that the phrase

_____

[2]Plaintiff also complains that various forms of the Alternate Care Plan Agreement have contained requirements which contradict the terms of the Policy or which plaintiff has already fulfilled, such as: paying for services up to only $40.00 per day; stating the need to fulfill an Elimination Period; stating that benefits will not exceed the maximum lifetime benefit as listed in the Policy Schedule, which contains no maximum lifetime benefit limit; and limiting benefits to only home health care services provided by Golden Heritage. The majority of these items were resolved when Cynthia Weurdig, Manager of Claims Consumer Affairs, assumed responsibility for the file and issued a corrected
(continued...)

"cost of services" is ambiguous, and that a fact issue exists as
to whether plaintiff's interpretation is reasonable.

The court finds the policy language clearly and
unambiguously limits receipt of the Waiver of Premium Benefit,
Prescription Drug Benefit, and $100 per day Long-Term Care
Benefit to a period of time when the insured "is confined in a
Long-Term Care Facility." Plaintiff's attempt to contort the
Policy language to claim otherwise is absurd. If language in an
insurance contract can be given a "definite or certain legal
meaning," then the policy is not ambiguous. Lynch Props., Inc.,
140 F.3d at 626. "Disagreement over the meaning or interpretation
of a term is not sufficient to make a provision ambiguous or
create a question of fact." Id.

Both the Waiver of Premium Benefit and the Prescription Drug
Benefit provisions in the Policy expressly apply "while an
Insured Person is confined in a Long-Term Care Facility. . . ."
No reasonable reading of the Policy can lead to any other
conclusion. The Policy explicitly defines Long-Term Care
Facility, and no definition can be remotely read to include

_____

(...continued)
   agreement.

15

residing at an insured's private residence.[3] Plaintiff's attempts to read the phrase "benefits for the cost of services" as including waiver of premium and prescription drugs that, by their express terms, are limited to confinement in a long-term care facility are disingenuous and violate the requirement that the court construe an insurance contract to "give effect to each term in the contract and to avoid rendering any term a nullity." Lynch Props., Inc., 140 F.3d at 626.

Plaintiff's claim for the $100-per-day Long-Term Care Benefit requires a similar result. Plaintiff asserts that

> the [Alternative Plan of Care Benefit] provides the $100 per day benefit, and "cost of services" simply explains what that benefit is intended to cover. As such, [defendant] is required to pay $100 per day for [plaintiff's] companion care or personal care services per the language of the [Alternative Plan of Care Benefit] provision.

Pl.'s Mot. at 23. Again, a plain reading of the Policy defeats plaintiff's interpretation. The Alternate Plan of Care Benefit provision states that defendant will consider paying

> benefits for the costs of services provided under a written, medically acceptable, alternate plan of care. . . . Services under an alternate plan of care will be paid at the levels and limits specified in the plan. Benefits payable for an alternate plan of care

---

[3]Plaintiff does not attempt to argue that his private residence is a "Long-Term Care Facility" as defined in the Policy. Rather, plaintiff's argument is grounded in the allegedly ambiguous phrase "benefits for cost of services."

and benefits paid for Long-Term Care due to the same or related cause, in total, will not exceed the benefit limits that, in the absence of such a plan, would otherwise be payable under the Long-Term Care Benefit alone.

Def.'s App. at 16. The Policy Schedule limits the Long-Term Care Benefit to $100 per day. Thus, under this provision, the Policy clearly contemplates that it will pay for services required by an alternate plan of care at the limits established by that plan of care, not to exceed $100 per day. There is no basis in the record for plaintiff's contention that defendant owes him a $100-per-day per diem to spend at his discretion.

Plaintiff's reliance on Guidry v. American Public Life Ins. Co., 512 F.3d 177 (5th Cir. 2007), is misplaced. In Guidry, the court disagreed with the insurer's use of the phrase "actual charges" because over the course of the parties' dealings it had changed its own practice of how it interpreted and applied that phrase, and because it was inconsistent with other language in its own policy. See id. at 182-83. In contrast, the summary judgment record contains no such contradiction concerning defendant's use of the phrase "cost of services." Further, defendant testified that it interpreted and applied the phrase "cost of services" and "actual charges" the same.

Each of the above-discussed matters illustrates the basis of the court's holding: the parties have failed to "mutually agree" upon the terms of the alternate plan of care, clearly a requirement in the Policy, whether or not such agreement is in writing. Further, the court concludes that defendant's reliance on the plain language of the Policy is not unreasonable, and that, as a matter of law, defendant has not unreasonably withheld its agreement to plaintiff's proposed modifications to the alternate plan of care.[4]

B.     The Extra-Contractual Claims

   1.    Violations of Texas Insurance Code, Prompt Payment
          Statute, and Duty of Good Faith and Fair Dealing

---

[4]Plaintiff apparently bases some or all of his claims on the fact that the Agreements defendant has asked him to sign specify benefits provided by Golden Heritage Home Health Services, whereas plaintiff contends he is also entitled to "personal care assistance"--specifically, his housekeeper and driver. Pl.'s Resp. at 24. Defendant does not appear to dispute that plaintiff could receive these services under the Alternate Plan of Care Benefit, nor does defendant assert that plaintiff is limited to receiving services from Golden Heritage; defendant only states that plaintiff has not submitted a proposed written plan of care for its approval. In turn, plaintiff points to the letters from his physicians which he has submitted to defendant. In reviewing the exchange of correspondence between the parties' counsel, in attempting to agree on the terms of an Alternate Plan of Care Agreement, the court does not find where plaintiff requested that those services be added to the agreement. Even in the latest correspondence between the parties, where plaintiff's counsel made modifications directly on the agreement, no mention is made of "personal care assistance" or of a housekeeper or driver. The court does not find this dispute creates an issue of material fact; with or without a provision for "personal care assistance" in the proposed Alternate Plan of Care Agreement, the parties have still failed to mutually agree on its other terms.

The basis of these claims, according to plaintiff, is defendant's refusal to pay benefits under the Policy although liability is reasonably clear. As discussed previously, the court has concluded as a matter of law that defendant's liability under the Policy has never become clear, as the parties have failed to reach mutual agreement on the terms of an Alternate Plan of Care, and thus defendant has not breached its contract with plaintiff. Where there is no breach of the insurance policy, there can be no violation of the Insurance Code or of the duty of good faith and fair dealing. See L'Atrium On The Creek I v. Nat. Union Fire Ins. Co. of Pittsburgh, 326 F. Supp.2d 787, 793 (N.D. Tex. 2004).

2.   Unfair Settlement and Claims Handling Procedures

To the extent these claims are premised on defendant's alleged failure to pay benefits for which liability is reasonably clear, summary judgment is proper for the same reason as plaintiff's other alleged insurance code violations.

Plaintiff relies on the affidavit of his expert, Peter Kochenburger, to establish defendant's purported liability for unfair settlement and claims handling procedures. Kochenburger merely reiterates plaintiff's legal arguments previously set forth by plaintiff's counsel of record and fails to raise a genuine issue of material fact. See Ramon v. Continental

<u>Airlines, Inc.</u>, 153 Fed. Appx. 257 at *1 (5th Cir. 2005)("[A]ffidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to support or defeat summary judgment").

    3.   <u>Misrepresentation</u>

        (i). <u>Misrepresentation regarding the policy form</u>

Plaintiff's misrepresentation claims are without merit. Although defendant failed to inform plaintiff that the form of the Policy issued to plaintiff in 1992 had not been approved by the TDI, there is no summary judgment evidence that plaintiff suffered any harm by this omission.[5] The parties agree that the only significant differences in the Alternate Plan of Care Benefit provisions in form 1091, issued to plaintiff, and the approved form 1092, are that form 1091 states that defendant will consider paying "benefits for the cost of services," while the 1092 states services will be paid as "actual charges up to the Long-Term Care Benefit limits."[6] Defendant's representative testified that she had considered plaintiff's claim under both policies and the outcome would be the same: the parties would

---

[5]Plaintiff's alleged damages arise from the failure of the parties to mutually agree on the terms of an Alternate Plan of Care.

[6]The "Premium Waiver Benefit," "Prescription Drug Benefit," and "Long-Term Care Benefit" provisions are identical in both policies.

still not be able to mutually agree on an alternative plan of care, as plaintiff still demands the Waiver of Premium Benefit, Prescription Drug Benefit, and $100 per day Long Term Care Benefit to which he is clearly not entitled. Absent financial damage to plaintiff as a result of defendant's use of an unapproved form, such use offers plaintiff no cause of action. Tex. Ins. Code § 1701.101. <u>See</u> <u>McLaren v. Imperial Cas. and Indem. Co.</u>, 767 F. Supp. 1364, 1376 (N.D. Tex. 1991).

(ii). <u>Alleged misrepresentations of agent</u>

To establish a case of misrepresentation, plaintiff must show that the person making the statement was an agent of the insurer and that the statement was false. <u>Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.</u>, 322 F.3d 847, 859 (5th Cir. 2003)(citing <u>Celtic Life Ins. Co. v. Coats</u>, 885 S.W.2d 96, 98-99 (Tex. 1994)). Defendant apparently does not dispute that Mr. Hagedorn, the individual who sold plaintiff the Policy, was its agent. However, the summary judgment record contains no evidence that defendant's agent made any false statements to plaintiff. Plaintiff testified that Mr. Hagedorn told him, "This policy will pay whether you're in a home, or you have the option of going home." Def.'s App. at 81. According to defendant and the Policy, this is a true statement. Plaintiff inferred that he would

continue to receive the $100 per day benefit upon his return home. Plaintiff did not testify that Mr. Hagedorn explicitly told him he would continue to receive the $100 per day benefit, or the prescription drug program, or the waiver of premium, upon his return home after confinement in a long-term care facility. Plaintiff's inferences do not amount to false statements by defendant.

"In Texas an insured has a duty to read the insurance policy and is charged with knowledge of its provisions." <u>Hunton v. Guardian Life Ins. Co. of America</u>, 243 F. Supp.2d 686, 706 (S.D. Tex. 2002)(internal citations omitted); <u>Burton v. State Farm Mut. Auto Ins. Co.</u>, 869 F. Supp. 480 (S.D. Tex. 1994)(internal citations omitted). An insured is deemed to be on notice of all terms of an insurance policy. <u>See Hunton</u>, 243 F. Supp.2d at 706. Here, plaintiff purchased the Policy in 1992, some fifteen years prior to this litigation. Plaintiff has had ample opportunity over the last fifteen years to read and understand his policy. Had he read the Policy when he received it, plaintiff should have immediately realized the scope of coverage as well as its limitations, and should have seen the provision stating that "[n]o agent may accept risks, alter or amend coverage or waive any provisions of this Policy." Def.'s App. at 20. Upon reading

the Policy, or even glancing at the first page, plaintiff also would have noticed the "30-Day Right to Return Policy" provision giving him the opportunity to rescind the contract, for a full refund, within thirty days after receipt, if he was dissatisfied with the coverage provided. Plaintiff is charged with knowledge of all provisions of the Policy, and his alleged failure to familiarize himself with the policy terms or take advantage of its rescission provision cannot now form the basis of a misrepresentation claim.

    4.   <u>The Fraud Claim</u>

Summary judgment is appropriate on plaintiff's fraud claim for the reasons discussed above.

VI.

<u>Order</u>

For the reasons discussed above, the court concludes that the motion for summary judgment filed by defendant, Transamerica Life Insurance Company, should be granted. Therefore,

The court ORDERS that all claims and causes of action asserted by plaintiff, George R. Roland, in the above-captioned

action be, and are hereby, dismissed with prejudice.

SIGNED August 1, 2008.

_____
JOHN McBRYDE
United States District Judge